(June 26, 1967)

ANTHONY BATTISTA et al., Respondents, v. PINE ISLAND PARK ASSOCIATION, INC., Appellant.—

Ughetta, Acting P. J., Brennan, Rabin and Benjamin, JJ., concur; Munder, J., dissents and votes to affirm the judgment, with the following memorandum: Plaintiffs'· plot was once a part of a larger parcel most of which was clearly within the Godfrey tract. Plaintiffs' predecessor acquired her title in 1943 by a deed which included a recital that she had access to the beach. During her occupancy and until 1955, when she removed from the property, she enjoyed unquestioned use of the roads and the beach. She conveyed to plaintiffs in 1957 with a similar beach access right. Plaintiffs used the beach until 1962 when their right to do so was first disputed. I think the long acquiescence in such use requires this court in equity to construe the covenant strictly against the original grantor and its successor in interest, the defendant, and most liberally in favor of plaintiffs (cf. *Minister, etc., Reformed Protestant Dutch Church* v. *Madison Ave. Bldg. Co.*, 214 N. Y. 268, 275). In such case the defense of laches has some merit (see, *Pappas* v. *Excelsior Brewing Co.*, 170 App. Div. 692). I agree with the result reached in *Grace Harbor Corp.* v. *Grace Harbor Assn.* (130 N. Y. S. 2d 592) because there the restriction was to benefit *resident* property owners. I also agree with the result reached in *Pine Is. Park Assn.* v. *Genovese* (N. Y. L. J., Dec. 2, 1964, p. 20, col. 2) because of the obvious distortion there of the restrictive covenant by the splintering of a portion of one lot on the Godfrey map to afford beach rights to the purchasers of lots in an unrelated and unconnected development. Here, however, by the fortuitous inclusion of a small piece of what the defendant concedes is the original Godfrey tract into the parcel sold to plaintiffs' predecessor in title, I think the beach rights attached. Unlike the *Grace* case (*supra*), the covenant here was to benefit " the present owners of property designated on said map ". The phrase " property designated " is not limited to numbered lots, for " designate " could as well mean to " point out the location of " (Webster's Third New Int. Dictionary) and refer to the entire Godfrey tract. Moreover, although not advanced by plaintiffs, it is not at all clear from this record that the major portion of their property was not a part of the original Godfrey tract. The westerly boundary of that tract, as alleged in the defendant's counterclaim, was a " private road of one Daniel Ellison and Land of William Dougherty ". The map filed in Queens County on May 27, 1890 does not identify either Ellison's road or Dougherty's land. But there is shown what appears to be another's private road, which is identified on plaintiffs' Exhibit No. 4 as Arlington Lane, to the east of an unnumbered plot contiguous to lots numbered 1 and 2. No other subdivision map was received in evidence and it must be assumed that this map is the one referred to by defendant in its counterclaim as the one to which its source of title, the 1930 quitclaim deed, related. On this state of the record it is as reasonable as not to conclude that the unnumbered parcel shown on the map was in fact

part of the Godfrey tract. The major portion of plaintiffs' property lies within this unnumbered parcel and even under the *Grace* (*supra*) rule of "resident property owner" plaintiffs would be entitled to succeed. In the circumstances of this case it was defendant's burden to show that plaintiffs' land was not entitled to the beach and access rights and this it failed to do.